IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**DERRICK HARDGROVE,**

    Plaintiff,

vs.                                              CASE NO. 4:04CV294-MP/AK

**LONNIE HOLMES**, et al,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging that his rights to privacy have been violated by failing to provide privacy screening during his shower, thereby exposing him to the view of a female correctional officer. (Doc.9). Defendants have filed a special report (doc. 32), which has been construed as a motion for summary judgment. (Doc. 46). Plaintiff was advised of his obligations in responding to the motion (doc. 45), and has filed a response. (Doc. 48). He also requested discovery (docs. 49 and 52), which was ultimately granted (doc. 54), but he has not filed a response or requested leave to file an additional response after service of Defendants' responses to his discovery. (See Doc. 62).

## I.    Allegations of the Amended Complaint (doc. 9).

Plaintiff claims that Jefferson Correctional Institution does not have privacy screening in their showers and Defendant Kyler, a black female corrections officer, was allowed to supervise him while he took a shower.  Plaintiff claims that he told Defendants Warden Lonnie Holmes, Assistant Warden Howard F. Clark, Colonel J. L. Reid, Captain Hamburger, and S. Milliken that Jefferson CI was not in compliance with regulations regarding the privacy screening, but they did not correct the problem.

Plaintiff has attached to his complaint the grievance measures he took and a copy of Florida Admin. Code Sections 33-208.301 and 33-602.20, specifically Procedure 602.036, which provides that:

> Inmates will not be supervised by officers of the opposite gender while inmates are showering or in the toilet area unless appropriate privacy screening is provided to obscure from view the breasts of female inmates and the genitalia and buttocks of both male and female inmates.

In his grievances to Defendants Captain Hamburger, J. L. Reid, Howard Clark, and S. Milliken, Plaintiff asserts that there is no privacy screening on the stalls at Jefferson and female officers, specifically Defendant Kyler, observed him taking a shower.

## II.    Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-

**No. 4:04cv294-mp/ak**

moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**No. 4:04cv294-mp/ak**

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment. Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

### III.    Defendants' Rule 56(e) evidence

   a)    Inmate Population Information Detail (Exhibit A)

Plaintiff is presently serving a life sentence in close custody status.

   b)    Inmate Disciplinary Actions (Exhibit B)

Plaintiff has an extensive history of disciplinary actions at a number of institutions primarily for disobeying orders and regulations, being in unauthorized areas, and lying to staff.

   c)    Affidavit of Johnny Reid (Exhibit C)

Mr. Reid is Assistant Warden of Operations at Jefferson CI and attests to the structure and operation of the housing units at the institution. According to Reid, there are several open bay dorms, designated A through G dorms, which resemble barracks-style housing. Two other dormitories, H and Y dorms, are single cells housing two inmates per cell. Three wings in H dorm are for general population and one wing is secure housing for special confinement cases. Y dorm is for inmates in disciplinary confinement. Male and female officers are assigned to the open bay dorms and the wings for general population in H dorm, two per shift, and one will always be a male.[1] Occasionally, one of the two officers will be out of the dorm to assist with other duties

---

[1] Only male officers are assigned to the secure housing areas of H dorm and Y dorm.

**No. 4:04cv294-mp/ak**

such as meals, supervision in the recreation yard, or assisting with showers in confinement or medication pick-up. One officer always remains in the dorm. Showers are allowed in the open bay dormitories from 5:00 p.m. to 10:00 p.m. Monday through Friday and 8:00 a.m. through 10:00 p.m. on weekends. The shower area in the open bay dorms are described as:

> Each shower area in open bay dorms has 8 shower heads lined along a single wall with privacy dividers between each shower head. The dividers, or privacy walls, are 4' feet 8-1/4" inches wide and create separate stalls or spaces for inmates to shower in.
>
> Reid adds:
>
> Inmates are expected to cover themselves appropriately while in route to and from the shower area. Inmates in open bay dorms may maximize their privacy in the shower by positioning themselves in the front part of the shower stall and facing forward (toward the shower head). In so doing, inmates can completely obscure the viewing of their genitals by other inmates or correctional officers. Inmates may also maximize their privacy in the showers by selecting the shower stalls that are furthest from the officers' station. A person in the officer's station cannot view the torso of an inmate in the last five stalls because of the angle, distance and the privacy walls (assuming the inmate remains within the privacy walls and positions himself near the shower head so as to obscure viewing of his torso from the officer's station). Inmates have the ability to maintain complete privacy through their selection of these stalls and proper positioning within the privacy walls.

Since the filing of the complaint, shower curtains have also been installed in the first three stalls providing additional privacy for those stalls nearest the officers' station. Reid attests that female officers may work in the open bay dorms during shower time and might scan the shower area for security or safety concerns, but unless there was an emergency any situation that would allow for an officer to view the genitals of an inmate would be conducted by the male officer. According to housing records, Plaintiff was

**No. 4:04cv294-mp/ak**

moved on March 23, 2004 (the date in question) from G dorm to H dorm (a single cell) where he remained until his transfer to Florida State Prison. According to Reid, H dorm has individual shower cells with grill gate doors which are not visible from the officers' station and inmates may hang towels on the door of the shower cell when showering.

Pictures of the shower stalls in G dorm as seen from the officers' station are attached to Reid's affidavit which show significant views are blocked because of the position of the stalls, the divider walls between them, and the curtains.

d) <u>Affidavit of Josephine Kyler (Exhibit D)</u>

According to Defendant Kyler she was working the third shift from 4:00 p.m. to midnight on March 23, 2004 in G dorm. She has attached her notes from the housing log that shows she worked with Officer Emanuel on that date and he left the compound at 4:48 to check in new inmates. At 5:00 she did a routine security check and five new inmate were processed in and assigned to bunk beds. At 5:30 inmates on G-I side were released to dinner, and at 5:40 inmates on G-II were released to dinner. At 6:00 she checked Plaintiff and another inmate out of G dorm and moved them to H dorm. By 6:44 Officer Emanual was back on the dorm. She attests that although inmates may take showers between 5:00 and 10:00 p.m. most do not take showers until after dinner. She does not recall Plaintiff taking a shower at 5:26 that day, but according to her notes she would have been in the officers station doing paperwork on the incoming inmates and preparing to release inmates into the dining hall. If she were in the officers' station and Plaintiff was taking a shower she would have given him only a cursory look from the

**No. 4:04cv294-mp/ak**

station at the stalls and would never have looked directly at him while he was showering.

The housing unit log supports Kyler's chronology of events with the exception that the log shows G-II went to dinner first at 5:30 and G-I followed at 5:40.

IV. **Plaintiff's Response**

Plaintiff states that Defendant Kyler concedes that she was alone in G dorm at the time he was taking a shower and this proves that she saw him showering. He also notes that she admits that she conducted visual checks of the shower area and this, too proves his claim. Plaintiff's argument is that Defendant Kyler should not have been assigned to this duty, should not have been left alone, and should not have been allowed to view the shower area, which he continues to assert had no privacy screening. He further contends that his complaints about this resulted in his transfer on March 23, 2004, to close confinement on H dorm, as Reid confirms in his affidavit.

Plaintiff also raises issues in his response not raised in his complaint about retaliation and false disciplinary reports that will not be considered here.

No evidentiary material was submitted with his response.

V. **Analysis**

a) <u>Right of Privacy</u>

There is no express "right of privacy" in the United States Constitution, but courts have fashioned such a right from the Fourth Amendment protections from unreasonable searches and extended this "right" to prisoners in limited contexts. See <u>Bell v. Wolfish</u>, 441 U.S. 520, 558-560 (1979). The Supreme Court declined to extend the Fourth

**No. 4:04cv294-mp/ak**

Amendment proscriptions against unreasonable searches to a prisoner's cell, Hudson v. Palmer, 468 U.S. 517, 526 (1984), but the Eleventh Circuit has recognized that prisoners retain some fundamental rights to privacy. Harris v. Thigpen, 941 F.2d 1495, 1513 n.26 (11th Cir. 1991). Later, the Eleventh Circuit joined other circuits to hold that a prisoner retains a "limited constitutional right to bodily privacy." Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993) (prisoners have very narrow privacy right involving "special sense of privacy in their genitals" and "involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating."). The Eleventh Circuit has declined to extend Fortner to mean that inmates have the same rights to bodily privacy as free persons and have held firm that this right is limited and should be evaluated on a case-by-case basis. Padgett v. Donald, 401 F.3d 1273, 1279 (11th Cir. 2005).

Thus, the Court acknowledges that Plaintiff had a right to privacy in not exposing himself involuntarily to Defendant Kyler, and the question now becomes was he in fact forced to expose himself to her. This is where Plaintiff's case falls short.

Plaintiff has come forth with no evidentiary materials to support his claim that the shower stalls had no privacy screening and to specifically refute the affidavits and pictures submitted by the Defendants which show that there were walls between each of the stalls and they were positioned in such a way that someone in the officers' station could not view a showering inmate if he chose to stand closer to the shower head, as set forth in the affidavit of Johnny Reid. Plaintiff's argument hinges entirely on the premise that his privacy rights were violated simply by the fact that Defendant Kyler,

**No. 4:04cv294-mp/ak**

being female, was on duty by herself while inmates were showering.  As the case law provided by Defendant shows, this is not the law.  See Somers v. Thurman, (Exhibit E)(Ninth Circuit finds cross gender monitoring reasonable); Johnson v. Tremper, (Exhibit F) (Second Circuit finds that prisoner failed to state a claim hinged on fact that he could have prevented exposure to female guard by stepping behind shower curtain); Robinson v. Boulier, (Exhibit G) (Eighth Circuit finds that surveillance of showering inmates by female guards reasonably related to legitimate penological interests); Thomas v. Shields, (Exhibit H)(Fourth Circuit finds that cross gender monitoring of inmates taking showers does not violate privacy).

    Plaintiff has come forward with no materials, not even his own affidavit, to refute the affidavits submitted by Defendant that there are in fact privacy screens or rather walls to protect an inmate from involuntary exposure to female guards.  It is not sufficient for Plaintiff to make the conclusory statement that there are no privacy screens in the showers when Defendant has provided pictures and affidavits describing in detail the structure of the shower area that clearly refutes Plaintiff's claim that he could not hide from view his genitals and buttocks.  Thus, the undersigned is of the opinion that Plaintiff has failed to come forward with evidentiary material demonstrating that there is a genuine issue of material fact on this claim, and therefore, Defendants should be granted summary judgment on this claim.

    b)    Qualified Immunity

Qualified immunity protects a government official who was performing discretionary functions from an award of civil damages in a § 1983 action unless he

**No. 4:04cv294-mp/ak**

violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The first step is to "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999), *citing* Siegert v. Gilley, 500 U.S. 226, 232_233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), and County of Sacramento v. Lewis, 523 U.S. 833, 841, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

It is the opinion of the undersigned that Plaintiff has failed to show the deprivation of a constitutional right, and thus, his claims would fail under the first step of this analysis. However, assuming that the facts presented in the complaint did allege a violation of Plaintiff's privacy rights, the second step in the inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier v. Katz, 533 U.S. 194, 202 (2001). Qualified immunity does not require that there be materially similar cases, only that the unlawfulness of an act or omission be apparent in light of pre-existing law. Hope v. Pelzer, 536 U.S. 730, 739 (2002), *reversing* Hope v. Pelzer, 240 F.3d 975 (11th Cir. 2001). Accordingly, the question to ask is whether prison officials have been given fair warning that their actions or omissions are unconstitutional. *Id.* If the law does not put the officer on notice that her conduct would be clearly unlawful, summary judgment based on qualified immunity should be granted. Saucier, 533 U.S. at 202.

**No. 4:04cv294-mp/ak**

As set forth above, the law on bodily privacy is not well settled. Further, the state regulations of which Defendant Kyler would have been on notice clearly allowed for female officers to work at corrections institutions and to monitor male inmates during showering, with the proviso that privacy screening be provided. Thus, there was nothing to put Defendant Kyler on notice that her conduct would be unlawful, and therefore an additional ground for dismissing Defendant Kyler would be that she is entitled to qualified immunity on this claim.

      c)      <u>Claims against remaining Defendants</u>

Defendants construe Plaintiff's claims as based on respondeat superior, which would clearly be grounds for dismissal since Plaintiff has not alleged that any of these defendants, by their supervisory positions, had any causal connection to Defendant Kyler's alleged unconstitutional viewing of Plaintiff. See <u>Swint v. City of Wadley</u>, 51 F.3d 988, 999 (11th Cir. 1995); <u>Rivas v. Freeman</u>, 940 F.2d 1491, 1495 (11th Cir. 1991); <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986). As the Court interprets Plaintiff's claim against these Defendants, he complains that he put them on notice by his grievances that there were no privacy screens on the showers, and their refusal to put screens up violated his constitutional rights. Since Plaintiff has failed to support his claim that there is no privacy screening and he is forced to expose himself to female guards, this claim fails, too.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment (doc. 46) be **GRANTED**, and this cause dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §

**No. 4:04cv294-mp/ak**

1915(e)(2).  The order adopting this report and recommendation should also direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and constitutes a strike within the meaning of 28 U.S.C. §1915(g).

**IN CHAMBERS** at Gainesville, Florida, this <u>16th</u> Day of March, 2007.

<u>s/A. Kornblum</u>
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 4:04cv294-mp/ak**